### ROCKEFELLER v. NUNAN, Commissioner of Internal Revenue.

### No. 222.

Circuit Court of Appeals, Second Circuit.
April 19, 1944.

Scott Scammell, of New York City (John Hall Forbes, of New York City, of counsel), for petitioner.

Robert Koerner, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

The only question on this appeal is whether there was substantial evidence to support the Tax Court's finding that the taxpayer had not "ascertained" a debt to be worthless in the year 1937, when he deducted it from his gross income. Section 23(k) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 23(k). The taxpayer's debtor was a company engaged in the business of automatic fire detection and extinguishing devices, which had for some years been unsuccessful. It began the year 1931 with a deficit, to meet which, and to provide for its expenses, it issued on May 1, of that year $125,000 of debenture bonds, secured by the transfer of all its patents then issued, or thereafter to be issued. The taxpayer bought more than half this issue, and the loss which he seeks to deduct, is the consideration which he paid for them. At the outset the company manufactured under its patents, but its operations had resulted in a deficit of $93,000 by the end of 1932; and a new company was organized in New York in 1933, to manufacture under licenses. This company also was unsuccessful, although it also held patents of its own; and in 1935, a Massachusetts company was incorporated, in which the taxpayer and two others were the only shareholders. The taxpayer contributed no money to the debtor company after the year 1935; but he did continue to invest in the Massachusetts company during the early part of 1936, until, owing to a dispute as to the management of that company, a receiver was appointed for it in June or July. In May, 1936, the debtor company filed a petition for reorganization under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in which it appraised its assets at about $256,000; but on September 17, 1936, the taxpayer filed an answer, alleging that the company was "hopelessly insolvent"; and on November 6, 1936, its vice-president filed an affidavit that its assets were not worth more than $10,000, and that its debts were $177,000. In April, 1937, a trustee in liquidation having been appointed, he sold all the assets for $100 subject to the lien of the debenture bonds.

It is on the basis of this sale that the taxpayer contends that he was justified in "ascertaining," and did "ascertain," that the bonds became "worthless" in 1937. He argues that, since as late as October, 1935, he "still believed in the merit of the product," (as the Tax Court found), and since he lent to the Massachusetts company $25,000 during 1936, he could not have really "ascertained" the bonds to be altogether "worthless" in that year. The fact that he was willing to advance money to the licensee necessarily presupposed that he thought the patents still had some value, and, in order to have any value to the licensee, they must have some value to the debtor, for the licensee was bound to pay the royalties to hold them. The fact that the taxpayer deducted from his gross income in 1936 the value of his shares in the Massachusetts company as "worthless", did not presuppose that that company might not be able to pay royalties to the debtor, or that its creditors had no incentive to keep it going. Again, it did not follow that the bonds were "worthless" because the debtor had become "hopelessly insolvent" and had only $10,000 to pay debts of $177,000: even as little as a five per cent dividend was inconsistent with entire "worthlessness"; and the question was not of a partial deduction.

Had the patents of the debtor been sold in 1937 for $100, free and clear of the lien of the bonds, there would have been more force in the taxpayer's position; he could then have said with possible plausibility that, not until that sale took place could he have been sure that even the remnant which remained in 1936 had been extinguished. But the sale was not

free and clear; being sold subject to the lien of the bonds, the patents may have had some value. We do not of course suggest that that value was the face of the bonds, but only that the sale by itself told nothing about the value. So far as the record discloses, the debtor's financial position, as it had stood at the end of 1936, did not change in 1937. The tiny remnant, which according to the taxpayer, justified his failure to deduct his loss in 1936, may or may not have continued throughout 1937; there is no way to tell. On the other hand, the record does suggest a strong motive for throwing the loss into the year 1937, for in 1936 the taxpayer had other deductions which reduced his gross income of about $103,000 to $50,000, while in 1937 he had deductions of only about $10,000—aside from the bonds—to deduct from a gross income of about $116,000.

All that the Tax Court decided, or had to decide, was that he had not proved that he "ascertained" the bonds to have become "worthless" in 1937; and that would be equally true, whether he so ascertained in 1936, or after 1937. Assuming, as he says, that he did have hope of some salvage throughout 1936, he did not prove that that hope was extinguished in 1937. Indeed, the company, which bought the patents was still at the time of the hearing (June, 1942), "selling the same products previously made" by the Massachusetts licensee; and sales of apparatus went on through the year 1937. In that year "There was another additional installation at $12,000 or $15,000," made for one of the former customers.

Order affirmed.